Good morning, and may it please the Court, Roth, Rajen, on behalf of Kenton King, I would like to reserve three minutes for rebuttal, and I will watch the clock. The warrant requirement, as the Supreme Court has reminded us, forms the bulwark of Fourth Amendment protection. In this case, the government sidestepped this important requirement in two ways. First, officers exceeded the scope of a warrant in searching King's cell phones, and second, the government seized King's electronic data without a warrant. Each error requires this Court to reverse. Police flagrantly exceeded the scope of a search warrant for King's cell phones. The Fourth Amendment confines a search to the bounds set forth in the search warrant. The warrant here limited police to searching for evidence of offense conduct from a 48-hour window. Rather than confine the search to this period, the forensic examiner chose the most intrusive option available and searched King's entire phones. Worse yet, this expansive search was the practice of the Henderson Police Department. Such a flagrant general search violates the Fourth Amendment and requires suppression of all evidence. Mr. Rajen, given the fact that Mr. King was alleged to have been using his phone for a number of the charged offenses, why was it impermissible for the magistrate to believe that a broader scope might be necessary for the search warrant? I think factually that may be a little bit confused in this case, based on both the statements of the victim and Mr. King himself. The offense conduct, which is what is referenced in the affidavit and described more thoroughly there, refers to a 48-hour window from June 2nd, which is when the victim first made contact with Mr. King, to June 4th, which is when contact terminated and the victim's mother reported the incident to the police. So that's why, in this case, officers had reasonable notice, based on the search warrant affidavit, that there was a limitation on the scope of the search that the officers could have undertaken. But there wouldn't have been potentially relevant information or evidence that law enforcement could have obtained even prior to this, relevant to these criminal charges? Not relevant to these criminal offenses, because of the nature of the offense conduct here. Mr. King met the victim on Omegle on June 2nd. So there was no contact with the victim any time prior to June 2nd in this case. So we know that there's a 48-hour period that contains the relevant evidence. And the forensic examiner in this case didn't even try to incorporate a different timeframe for looking for offense conduct. Rather, the forensic examiner acknowledged to using the most intrusive method possible in searching for data everywhere on Mr. King's phone. And we know, under cases like Riley, that the privacy interests that are there in a cell phone are extremely high. And here, the forensic examiner had options to limit the search to this 48-hour period. I want to point to three in this case. First, at the initial extraction step, the examiner could have used a logical extraction to specify content categories to search. So here, the warrants affidavit described the manner of the offenses, the devices used, and the relevant dates, making a logical extraction possible. Second, the examiner could have limited the retention of any overseas data. So the examiner acknowledged he could have removed information when parsing the raw data. And he already did that for inaccurate information. Counsel, am I on the wrong page here where I'm looking, for example, at the order overruling the objection ZR117, where the court said Spangler's testimony established that law enforcement encountered the very same situation as in Flores. Here, he explained that neither process available to law enforcement allowed him to call through and examine the individual files. So like the Flores agents, couldn't whittle the 1,100 pages down, nor could he extract text messages between just a few select people or those created between June 2 and June 4. Is this on the same point you're talking about? Yes, it is. So why is it that we should reverse that analysis? I'm having trouble seeing what exactly the court got wrong. So that conclusion is mistaken as a legal matter for a couple reasons. So first, I think part of the district court's concerns were motivated by a concern for deleted data, but there's simply no record evidence at the time of the warrant and at the time of the search that there was even deleted data. And to the extent the examiner then, through his examination, discovered the possibility of missing files, the common practice which this court endorsed in United States v. Setteghetti is to seek a further warrant once the examiner realizes that there may be files missing. But I think then what the district court did not address was that even if the initial extraction of the entire device was permissible, there was still a possibility for limiting the retention of any overseas data. So first, at the parsing step, the forensic examiner testified at the evidentiary hearing that he could have removed information, and he already did that for inaccurate information. So that's at 4 ER 672 and 673. Then the examiner could have also removed overseas data when generating the portable report for the case agent, and the examiner already did that for duplicative data, which is at the same record page as well. But counsel, I understand your argument of the, why you think the district court made a legal error. The district court on the same page where I was at says, to borrow language from Flores, in short, the government executed the warrant exactly as it was written. I thus find that Spangler's forensic extraction did not exceed the scope of the fully integrated warrant. Is that, are those determinations, how do, what standard do we use in reviewing them? I believe we review that de novo because that's also a legal conclusion about the reasonableness of the search under the Fourth Amendment, especially because the court is trying to analogize that to the legal conclusion that this court made in Flores. But in terms of discussing how the government executed the warrant, is that a factual determination? So those factual, so those are factual findings, but those factual findings are not in dispute. Rather, I think the district court did not address the record evidence that differentiates this case from Flores. So here, we have testimony from the forensic examiner, which I don't think was ever there in Flores, that there were other methods for limiting the retention of overseas data. And I think it's important in Flores- So, so counsel, I, I apologize for interrupting you. I'm going to ask you to turn to a different issue and if you, if basically you need more time for rebuttal because of my question, I'm, I'm fine with that. So I would, and I'm going to focus on this with your friend. It seems to me that Meek is binding on this court. Yes. And my question, though, is in going through the record, it strikes me that even if the district court made an error, and I think Meek commands the result here in terms of what the instruction should have been, it seems to me the error is harmless. It seems to me that, I mean, although the standard is high to show that in a circumstance where you actually requested and didn't get the instruction, where if I'm right about Meek, you were entitled to, it seems to me the evidence is absolutely overwhelming that your client knew that the victim was under 18. The text messages talking about him telling her to put 18 on the ad, the high school year that she was at, why isn't, if we accept your view of Meek, why isn't the error harmless? So you're correct that the standard for this, for showing harmlessness in this context is high. It is high. And I think, and I think that makes it difficult to show harmlessness on this record. So I want to point to a few record facts. So first, the place that Mr. King met the victim was on an adults-only website. The victim acknowledged that Omegle is limited to only those individuals who are 18 years or older. She also had talked about engaging in sexual conduct before. She had also talked about engaging in prostitution before. And she was in high school, right? Yes. I don't think that's dispositive. No, it's not dispositive because you could be 18 in high school. But I have, I'm looking, for example, at ER 1976, the parent lock on my phone along with the tracker, she's going to see, put your age as 18, I mean, it just, what evidence was there from which a jury could have concluded here that after having seen her, dealt with her, have all these text messages, the stuff about put down that you're 18, how could a jury have concluded that he didn't think that she was under 18? So I would point to the record evidence I cited before, but I would also say that she acknowledged during her testimony that she never mentioned explicitly messaging Mr. King for age, and that the only other evidence was that she claimed that she told it to him in person. Oh, yes. I mean, so on the one hand, you can say she never messaged it to him, but at ER 1598, she testified, he asked me how old I was, where I went to school, and just some other questions like that. What age did you tell him?  So she certainly testified to that, the jury doesn't have to believe her, but that's what she said. And can I add to that? I mean, you know, there's also ER 1457 that says, it's a text message, where did you go to school? Foothill. What year of high school? Freshman year. So even if she didn't specifically mention her age, the freshman year indication I thought was pretty strong as well. I think you're right to acknowledge that it is strong, but I think there's also sufficient record evidence to believe that Mr. King did not know when she was lying or she was not lying. Indeed, if you look at her cross-examination in this case, she admitted that she told Mr. King some lies. For instance, she lied about working as a prostitute before, she lied about engaging in this activity before on Omegle. So even when she mentioned stuff, for instance, her school, where she gave two different schools, Mr. King could not reasonably know whether, or at least on this record, for the burden of harmlessness, could not believe that when she was telling the truth and when she was not telling the truth. I think it's also important to keep in mind for coercion and enticement, because it incorporates several state offenses, it's possible that some of the state offenses could have occurred much earlier on in the conversation, while some of the other incorporated offenses occurred much later on in this conversation. And here we don't have any unanimity as to the specific incorporated offense on which all of the jurors, in fact, agreed in this case. And I think further underscoring issues with credibility of the victim in this case, the jury did acquit Mr. King of the only charge that was largely dependent on the victim's testimony in this case. So we think that — And what was that charge? That was attempted sex trafficking. So he was acquitted of attempted sex trafficking, the one offense that was largely dependent on her testimony. So given all of this equivocal evidence in this case, we think the government cannot satisfy its burden of showing harmlessness with the jury instruction. So let me ask you one more question on this issue. As I said, it seems to me that Meek is binding, and I'll be discussing that with your friend. But if Meek weren't binding, I have a hard time seeing why in the sentence structure of 2422B, why knowingly modifies who has not attained the age of 18 when it immediately precedes, persuades, induces, entices, or coerces. And the Congress certainly knew how to put scienter as to age in a statute if it wanted to. So if we were writing on a clean slate, and I know what other circuits have said, why wouldn't we interpret it in a textual way to apply the enumerated scienter requirement to the verbs that immediately follow it? So I think this is quite clearly set forth as a textual matter in Rahife, where the Supreme Court talked about transitive verbs that are modified by an adjective. So here, the verbs are persuade, entice, coerce. They're all operating on objects. And with transitive verbs, you're assuming that the transitive verb applies to all objects listed thereafter. And here, the adverb knowingly modifies that initial transitive verb. So if you go back to Rahife, Rahife says that the presumption in favor of scienter therefore compels as a textual matter reading this knowingly requirement as applying to all subsequently listed elements. And I think- Even in the context of statutes where knowledge as to the age is generally not required? So we would first contest the assumption of that question. We believe that knowledge of age is required in this context to tend the constitutional line because otherwise it would criminalize speech between adults even for completed offenses. And I think if you're worried about the age appearing so late in the sentence defining the offense, I would point this court back to the Supreme Court's decision in excitement video where there was a much longer gap between the listing of knowingly and then the subsequent listing of the element of the age. So if knowingly extended throughout the provision in excitement video, I don't see a textual reason why it wouldn't extend through this provision as well. So are there other issues that you would like to address in your opening presentation? If there are, I'll give you some extra time on your clock now.  If I could briefly just talk about the preservation request issue. How much time would you want? Two minutes is probably- All right. Why don't we give you- Why don't we put two and a half minutes on the clock now? And we'll also give you a few minutes for rebuttal. Thank you. So police unconstitutionally seized Mr. King's TexNow data without a warrant. Police issued a preservation request to TexNow to hold King's data until police could acquire a warrant. The district court erroneously rejected this argument by concluding that King had not shown a but-for-cause relationship between this request and the collection of the data under this warrant, but King did carry his burden. So causation under the Fourth Amendment has two components. The first is an initial burden on the defendant to show a factual nexus between the illegality and the collection of the evidence. And here, Mr. King satisfied this slight burden for two reasons. First, the warrant referenced the unlawful seizure. The warrant required a disclosure of any information that had been preserved under 18 U.S.C. 2703 F, and courts have said that a sufficient nexus exists where the government continues this illegal seizure while it procures a search warrant. Second, King's data could have been deleted, for example, by him in the week between the preservation request and the ultimate collection of the data under the warrant. And why do you think that the district court is wrong in analyzing this as this, there's no but-for-cause because these were about internal retention policies and not subject to the preservation. It's not clear that it was a preservation record that preserved these records. So I believe the district court misunderstood the causation inquiries. So first, the district court improperly put this at Mr. King's initial burden of showing a factual nexus. But under cases like United States v. Allard, this requirement is satisfied if the seizure continues while the government goes to schedule. Although going to Judge Sanchez's question, I'm looking at ER 531, the e-mail text now will voluntarily preserve data for a period of 90 days. This preservation will expire on 12-3-2020. I mean, that's an admitted fact, right? Yeah, that's what the text now was doing in response to the preservation request. But the fact that text now describes it as voluntary does not control the state action inquiry. But it almost, the way that I read it, it's almost as if text now is just informing the government what it would do. If this were, if it had said, well, our normal policy is this, but we're willing to extend it X, Y, and Z, you know, then I think you might have more of a point. But this just seems to be an iteration of the company's own policy. I don't think that's correct. So if you look later down in the e-mail, text now says text messages generally may be available for a period of up to two years. But this 90 days, the reason why 90 days is important is that if you look at 2703F, it says that upon receiving a preservation request, a company has to preserve the information for a period of 90 days. It does not matter that text now said that it was doing it voluntarily. The impetus for the preservation was the government's e-mail. And if you look at cases like United States versus Reed, the motivation behind the search is sufficient to then satisfy the government agent inquiry. All right. Thank you, counsel. And we'll give you three minutes for your rebuttal. Good morning, Your Honors. May it please the court. Skylar Pearson on behalf of the United States of America, the appellee in this case. With the panel's permission, I'd like to start with the jury instruction issue that Judge Bennett, that you raised, that you said you wanted to talk to me about. With respect to that issue, the jury instruction was proper in this case because the text of the statute does not require that the government prove that the defendant knew the age of his victim. So counsel, I'm sorry to interrupt so early. And a priori, I think I would agree with you. But I am, and I understand your argument about why the Meek Court did what it did. But the language of the Meek Court is knowledge of the person induced is essential to the construction. And there's other language like that. In prosecuting a violation, the government must prove both knowledge or belief that the person induced is a minor. And I just have a lot of trouble seeing under our case law, Miller v. Gammie, how even if we think the Meek Court got it wrong, and you might be able to convince me of that, I just don't see how, as a three-judge panel, we can say, eh, they didn't really mean it. They were talking about attempt sting statutes. That's why they put this language in here. I have trouble seeing how we can say that. So why don't you take your best shot at coming back at me at that, why my at least preliminary view is wrong. Yes, Your Honor. With respect to Meek, I don't think this panel has to determine that Meek was wrong. But I do think the context matters. The context of Meek is, again, an adult decoy case. Whereas this case is much different. We're not dealing with someone posing as a child, an adult posing as a child. We're dealing with an actual underage victim in this case. Well, excuse me. Counsel, if I may, I'm sorry to interrupt you. You said this court can't find, doesn't have to find that Meek was wrong. Well, we can't find that Meek was wrong, first of all, under the rule of orderliness. Only an en banc court can do that. So the next question is, and I think this really goes to the heart of what Judge Bennett was asking you, and it's certainly something that I'm interested in hearing about. And that is the suggestion which has been made that Meek should be limited in its scope to those circumstances where there was a decoy, so to speak, and not a situation like this where there was a live person. So what do you have to say about that? I think that's absolutely right, Your Honor. I think Meek should be limited to those circumstances. And I think the language, the plain language of the statute itself can help us get there in addition to the... So you don't think Meek is controlling here? I don't, Your Honor. I think it certainly should play a role in this court's decision, but I don't think it controls the way that this panel needs to read that decision. Because of its limiting effect. So counsel, when the language of Meek is in prosecuting an alleged violation of 2422B, the government must prove both knowledge or belief that the person induced is a minor, and something not relevant here, must prove. So in the United States' view, we should read that as saying, must prove in the case of a sting operation. Yes, Your Honor. Okay, I understand your argument. I mean, my concern is when Meek talks about... I understand the context of what you're describing, but it's referring to the elements of the offense and it's a textual-based analysis. So the elements shouldn't shift, you know, if you're textually construing the statute. And one of the elements that Meek says is knowing that a person under 18 years of age is part of it. And so it's... And there's nothing about Meek before or after that would be limited or try to limit itself to the notion that this would just be with a decoy. And had it done so, I don't think it would have described it as an element. And so I think that's the tough hill you have to climb with this. Your Honor, with respect to the text itself, I think the adverb knowingly certainly is limited to what it's modifying, the verbs that follow. Knowingly persuades, induces, entices, or coerces. And so I think looking at the plain text itself, that adverb knowingly modifying the verbs as it normally does in the English language, that gets us to the plain reading. On top of that, Your Honors, with respect to the knowingly element, if you look to the very next statute under 18 U.S.C. section... So counsel, again, I apologize for interrupting. I do think we have your argument on this point. I would like you to address the United States' view of if we disagree with you on Meek, is the error, the putative error here, harmless? The error is absolutely harmless, Your Honor. Why don't you tell us why? Even assuming that this Court disagrees with me with my reading on Meek or the plain language of the statute, the evidence that the government presented at trial, as Your Honors noted earlier when talking to opposing counsel, is overwhelming. The defendant knew that the victim had just finished her freshman year of high school. The defendant knew that the victim lived with her mom. He knew that she didn't own a pair of high heels, that there were parent locks on her phone, that her mom tracked her location and regularly went through her phone. And the defendant himself told her, knowing all of that, to delete some of their messages between the two. The defendant picked her up from her mom's house, dropped her back off at her mom's house, told her to set, as Your Honors noted, the age of the websites that he wanted to create for her at 18. The video taken by him instructed her to state her name and tell him where she went to high school. He referred continuously throughout their conversations, used the phrase teen slots. Counsel, let me ask you this. You would agree, you know, if there's been a request for a particular jury instruction and there's instructional error, it's difficult to overcome the prejudice standard of a reasonable probability. Could it be the case that even if there is this evidence, if the jury was not properly instructed to focus in on age as an element of the offense, that that itself is enough to cause the prejudice here? Because they weren't being told to consider what defendant's knowledge of the age was in the context of this count. No, Your Honor. Because of all of that evidence that the government presented at trial, as well as the arguments in closing arguments, the government presented at closing argument, this issue squarely being before the jury with respect to the defendant knowing that the victim was under age. Although I might agree with you as to the evidence, I think that's a little bit of an unfair argument because in a circumstance where the defense has requested an instruction, the court has refused the instruction. I mean, they need to tailor their arguments to the instructions the court is giving, not to the thought that the appellate court might overrule the trial court. So I don't think it's really fair to concentrate on arguments that were made based on the instructions the court gave, which might have been erroneous. Your Honor, I'd agree with you, but for the context of this case and the charges involved in this case. The coercion and enticement was not the only charge presented to the jury and that was talked about and presented arguments to and evidence to with respect to this victim's age. So I think it is a fair argument to make that the issue about the victim's age was squarely before the jury. The jury knew that the defendant knew the victim was under age. What other count of conviction did the age of the victim come up in particular? The one that we did not get the conviction on. So what about that? I mean, I guess to your friend on the other side, where the jury is focused in on that age, there was an acquittal. And there could be other reasons, right? They might find that the victim wasn't being trafficked in light of the evidence that was presented. But does that suggest that there might be a reasonable probability of error here, of prejudice? I don't think so, Your Honor. And again, I'd go back to the strong evidence throughout the case that was presented. I mean, we're not just talking about a few things that would have talked about the age. We're talking about an overwhelming amount of evidence that talked about the victim's age and the defendant's knowledge of the victim's age. Do you want to turn a little bit to the search warrant issues? Yes, Your Honor. With respect to the search warrant issue that came up with the defendant's device, the search warrant was not overbroad because the search warrant allowed for a, quote, bit-by-bit, quote, image of all data on the storage devices. And that's in Excerpt of Record 117. The officers here used the approved two-step approach. It also was not overbroad, Your Honors, because it was tailored to the crimes involved in this case and the means by which the defendant committed these crimes. What about this 48-hour issue that counsel has raised? The 48-hour issue, again, I think that comes down to the fact that there were multiple means by which the defendant committed these crimes. We're not just dealing with something in the abstract. We're looking at crimes that were committed using multiple platforms on a cellular device, not just, you know, ones that had to access the web or anything like that. We're dealing with storage. We're dealing with web access. We're dealing with multiple apps used. And all of that shows that the search was not overbroad despite that 48-hour time limit. With respect to the same, the defendant's devices, we also discovered that there was deleted data, and that would not have been discovered or been able to be searched and come up with but for the search warrant being done in the way that it was. If there are no other questions about the defendant's devices, I would like to turn briefly to the preservation notice. The government issuing a preservation notice under the statute, 18 U.S.C. section 2703F, is not a seizure. Techs now exercise control over the data of its servers. In order for the defense to show that there was an error on the district court's part, he needs to show that there was a meaningful interference with the individual's possessory interest. That's out of United States v. Jacobson. He cannot do so here because the data was not his. It was held and stored by a third party. The third party Techs Now also did not act as a government agent. The government only made the request to the third party Techs Now to preserve the data. The requirement that Techs Now do so was not because of the preservation request made by the government, but because of the statute involved here. If there are no other questions... Well, so what are the best cases to think about this notion of whether a preservation request turns a third party into a government agent? I think the best cases to look at are cases... I think I'd point out to the court that there are no cases that have held that a seizure like this, a preservation request, constitute a seizure. And so I don't think the analysis needs to even get to the fact or the part about representing a government agent. There are no further questions. The government respectfully requests that the court affirm the district court on all the issues presented. All right, thank you, counsel. Thank you. I'll begin with the jury instruction issue. So first, addressing the government's attempt to limit it to adult decoys. I think that's wrong first for the reason that Judge Sanchez pointed out. The decision in Meek was a textual analysis based on the longstanding presumption in favour of scienter and how you read the term knowingly as extending throughout the provision. I think it's important to keep in mind that the attempt violation appears in the exact same sentence after the word knowingly, meaning the textual analysis would apply equally with this offence too. I also think the constitutional concerns would apply for the reasons we highlighted in our brief. Even for some completed offences, like lewdness with a minor under Nevada law, that offence can occur virtually and it's a strict liability offence, meaning that it would hold somebody accountable for engaging with lewd text with a person they thought to be an adult but was still in fact a minor. Therefore, the constitutional concerns pointed out in Meek would exist with completed violations as well. On harmlessness, you are right. The standard is no reasonable possibility that the verdict would have been different. And I think this court has repeatedly emphasized that this is a high and difficult burden to meet. Here, there are several facts that make it impossible to meet on this record. First, the circumstances under which they met. They met on a website restricted to adults where they immediately started talking about adult topics. Second, the possibility that Mr. King did not know when the victim was telling the truth and when the victim was lying. Indeed, the victim on cross-examination acknowledged that she was lying to him over text in order to keep the conversation going. I would point this court to 8 ER 1604. None of the government's evidence is dispositive largely because it relies on the victim's testimony in this case, and there was an acquittal on the count that relied most on her testimony, meaning that the jury could have simply disbelieved her given the remaining evidence. I think it's also important to keep in mind the nature of this particular offense. It's a continuing offense that incorporates a whole host of other violations, meaning it's hard to determine what violation, underlying violation, the jury actually fixated on, which makes a harmlessness inquiry even more difficult here. I also want to briefly address the search issues. So first, the government relies on the bit-by-bit provision of the warrant, but that provision is notably limited to evidence described in the warrant, meaning that the forensic examination still had to be limited by the affidavit. The government then points out that no other circuit for the preservation request issue or no other court has found a violation. That's largely on causation grounds, but here we have a distinctive record where the government never introduced the very policy that talks about data retention. It introduced the law enforcement policy three years after the investigation, meaning it could not carry its burden on causation. So for any of these reasons, this court should reverse and remand.
judges: BENNETT, SANCHEZ, Ezra